56 F.3d 60
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 Charles Preston CARTER, Individually, and as Administrator
of the Estate of Terry Ricardo Smith, and for the
benefit of his kin, Plaintiff-Appellant,
and
Debra Germaine SMITH; Kenneth Lee Smith, Jr.; Eugene D.
Smith; Angela Smith; Pamela S. Woods; Edward
Beard, Individually and severally, Plaintiffs,
v.
O.E. SHIRES, Individually and as a deputy sheriff of
Botetourt County, Virginia; Jerry Caldwell, Individually
and as Sheriff of Botetourt County, Virginia; Gerald
Burgess, Individually and as Botetourt County Administrator;
Botetourt County, Virginia, Defendants-Appellees.
 No. 94-1577.
 United States Court of Appeals, Fourth Circuit.
 Argued March 10, 1995.
Decided May 23, 1995.
 
 ARGUED: Melvin LeRoye Hill, Roanoke, VA, for appellant. William Fain Rutherford, Jr., Woods, Rogers & Hazlegrove, P.L.C., Roanoke, VA, for appellees. ON BRIEF: Randy Virlin Cargill, Woods, Rogers & Hazlegrove, P.L.C., Roanoke, VA, for appellees.
 Before WILKINSON and NIEMEYER, Circuit Judges, and SPROUSE, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 Charles Carter, the administrator of the estate of Terry Smith, brought this action against Deputy Sheriff O.E. Shires and Sheriff Jerry Caldwell.[1] The estate alleges that, in causing Smith's death, Shires and Caldwell violated 42 U.S.C.A. Sec. 1983 (West 1994) and Virginia's wrongful death statute, Va.Code Ann. Sec. 8.01-50 et seq. (Michie 1992).[2] The district court granted summary judgment to Shires and Caldwell. Carter appeals. We affirm.
 
 
 2
 * On the afternoon of October 24, 1991, the Botetourt County Sheriff's Office received a call from Pattie Meadows, the owner of Meadows Country Store in Buchanan, Virginia, reporting a robbery of $260. Meadows provided the sheriff's dispatcher with a description of the suspect, later identified as Smith, and of the car he was driving. She added that the suspect had threatened her with his right hand in his jacket pocket, as if concealing a gun. The dispatcher alerted the deputies to a "Code 37" (an armed robbery or hold up) at Meadows Country Store. She also repeated Meadows' description of the suspect and his vehicle.
 
 
 3
 Deputy Shires, driving a marked police car, immediately began searching for the robber. He found the suspected vehicle and pursued it until its driver--Smith--pulled into a driveway and stopped. Shires also pulled into the driveway, parking at an angle to block the exit. Nearby, a school bus was unloading elementary-age children. Shires testified that he opened the passenger side window and, after instructing the children to scatter, pointed his revolver at Smith, who, by this time, was standing beside his vehicle. Shires ordered Smith to place his hands on his car. He did not comply, instead alternating glances between his car and the deputy. As Shires exited the police car, Smith reached into his own vehicle, grabbed something, and began to run behind a house. Shires testified that he did not see what Smith retrieved from his car, but believed it was a weapon.
 
 
 4
 Shires ran in front of the house in an attempt to intercept Smith, but was unsuccessful. He then shouted for Smith to stop. After Smith ignored this order, Shires fired a warning shot into the air. Smith continued to flee. According to Shires, when Smith was approximately 100 feet ahead of him, Smith turned his shoulders back toward Shires. Fearing that Smith was going to shoot him or one of the children, Shires fired first, mortally wounding Smith with a bullet to the back of the head. No weapon was found either on Smith's person or in his car.
 
 
 5
 Smith's estate alleges that Shires' actions, resulting in Smith's death, violated both Sec. 1983 and Virginia's wrongful death statute. Its claim against Sheriff Caldwell is based on his alleged failure to properly train and supervise.
 
 
 6
 Shires successfully argued below and contends here that the doctrine of qualified immunity shields him from Sec. 1983 liability. Alternatively, he contends that his actions constituted a reasonable seizure under the Fourth Amendment and did not violate Smith's rights. Sheriff Caldwell argues that he is protected by Shires' qualified immunity because his putative liability as a supervisor would be derivative. He also claims that Smith's estate failed to identify any departmental policy as the cause of Smith's death. Kentucky v. Graham, 473 U.S. 159 (1985); Monell v. Department of Social Servs., 436 U.S. 658 (1978). Shires and Caldwell both maintain that Smith's armed robbery bars recovery under Virginia law.
 
 II
 
 7
 We review de novo the propriety of the district court's grant of summary judgment, employing the same standards as the district court. Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir.1991), cert. denied, 502 U.S. 1095 (1992). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The court must resolve all reasonable inferences in favor of the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986).
 
 
 8
 Qualified immunity shields government officials from Sec. 1983 liability as long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In an excessive force case, the specific inquiry "is whether a reasonable officer could have believed that the use of force alleged was objectively reasonable in light of the circumstances." Rowland v. Perry, 41 F.3d 167, 173 (4th Cir.1994). As a pure question of law, the qualified immunity issue is appropriately resolved at the summary judgment stage. Pritchett v. Alford, 973 F.2d 307, 313 (4th Cir.1992).
 
 
 9
 A police officer may use deadly force when "the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others." Tennessee v. Garner, 471 U.S. 1, 11 (1985). Unless Deputy Shires was objectively unreasonable in deciding such a condition existed, the doctrine of qualified immunity protects him.
 
 
 10
 We are persuaded that Shires acted reasonably. Smith's estate does not deny that Smith robbed Meadows Country Store. Nor does it deny that Meadows reported to the police that Smith was probably armed. Moreover, Smith disobeyed Shires' order to place his hands on his car, fleeing instead. With homes and elementary school children in the vicinity, the flight of a presumably armed robber created an explosive situation. Smith increased this volatility still further by turning back toward Shires,[3] at which point Shires reasonably feared for his life and the lives of the children. We agree with the district court that Shires is entitled to summary judgment on the Sec. 1983 claim, based on qualified immunity.[4] It follows that summary judgment for Caldwell on the Sec. 1983 claim is also appropriate.
 
 
 11
 Turning to the wrongful death claim, "under Virginia law a plaintiff's participation in an immoral or unlawful act precludes recovery for injuries incurred as a result of that act, and consequently a decedent's participation in such an act bars recovery for wrongful death by [his] personal representative." Hill v. Nicodemus, 755 F.Supp. 692, 694 (W.D.Va.1991), aff'd, 979 F.2d 987 (4th Cir.1992). See also Zysk v. Zysk, 404 S.E.2d 721, 722 (Va.1990); Wackwitz v. Roy, 418 S.E.2d 861 (Va.1992). Because Smith's unlawful act of robbing Meadows Country Store contributed to his death, his estate cannot recover on its wrongful death claim.
 
 
 12
 The judgment of the district court is, therefore, affirmed.
 
 AFFIRMED
 
 
 [1]
 The complaint also listed Smith's siblings as plaintiffs. In a ruling that is not appealed, the district court dismissed the siblings, leaving only Carter as plaintiff. Nor does Carter appeal the dismissal of Botetourt County and its administrator as defendants
 
 
 [2]
 Carter also sought an order decreeing that Shires posed a clear and present danger to the citizens of Botetourt County and an injunction preventing Shires from carrying a weapon. Carter does not appeal the district court's dismissal of this count
 
 
 [3]
 Carter argues that the location of the bullet's entry (the back of Smith's head) belies Shires' claim that Smith turned back toward the deputy. However, the medical examiner's uncontradicted affidavit established that the wound's location was consistent with Shires' account. Carter's contrary assertion relies upon mere speculation. As this court has frequently indicated, speculation cannot create a genuine issue of material fact to defeat summary judgment. Drewitt v. Pratt, 999 F.2d 774, 778 (4th Cir.1993)
 
 
 [4]
 Because we find Shires is entitled to qualified immunity, we need not review the Fourth Amendment issue