United States Court of Appeals,

Fifth Circuit.

No. 94-10345.

Issam HASSAN, as next friend of Ameen Hassan, a minor child, Plaintiff-Appellee,

v.

LUBBOCK INDEPENDENT SCHOOL DISTRICT, et al., Defendants,

Lubbock Independent School District, Joe Williams, Vincent Thomas, and Ricky Atkins, Defendants-Appellants.

June 27, 1995.

Appeals from the United States District Court for the Northern District of Texas.

Before POLITZ, Chief Judge, GARWOOD and BENAVIDES, Circuit Judges.

POLITZ, Chief Judge:

Issam Hassan, on behalf of his son Ameen Hassan, sued the Lubbock Independent School District; the principal of Whiteside Elementary School, Joe Williams; a teacher at Whiteside Elementary, Vincent Thomas; and a juvenile probation officer at the Lubbock County Youth Center, Ricky Atkins; asserting fourth and fourteenth amendment claims. LISD, Williams, Thomas, and Atkins appeal the district court's denial of their motion for summary judgment based on their claim of qualified immunity. We dismiss the appeal of the LISD for lack of appellate jurisdiction and reverse the denial of summary judgment for the remaining defendants and render judgment in their favor.

*Background*

On February 27, 1992, approximately 103 sixth graders from James A. Whiteside Elementary School in Lubbock, Texas, visited the

1

Lubbock County Youth Center, a facility housing both the Lubbock County Probation Office and a detention center for minors between the ages of 10 and 17 who are either in custody awaiting adjudication on criminal offenses or being detained thereafter. Williams and Thomas accompanied the children.

At the outset of the tour, Center employees explained to the children that the Center expected all visitors to comply with Center rules concerning deportment and respect, and that they should listen carefully and not talk inside the facility. Center personnel then divided the schoolchildren into groups, one of which consisted of 15 boys, Williams, Thomas, and a Center employee, Ricky Atkins. As this group made its way through the facility Ameen Hassan was cautioned repeatedly for being inattentive and disrespectful. When he persisted, Williams and Thomas asked Atkins to place him in a holding room so that the other students could continue the tour without distraction.[1]

Atkins took Hassan to a room used to hold juveniles brought to the facility pending retrieval by their parents or admission into the Center. The room, located at the front of the facility outside the detention area, contained a bed and a toilet, but was otherwise bare. Its metal door had a glass partition. Hassan was locked in this room for approximately 50 minutes, monitored continuously by Center employees and Thomas who returned to the area to check on

---

[1]The defendants describe the facility as a series of locked sections which must be keyed to enter or exit any section. Atkins apparently escorted Hassan back through several sections to a holding room, also described as an "intake" room.

him.

When the other students finished their tour, school officials led them by the room in which Hassan was waiting and allegedly told them to look at Hassan. Thomas then escorted Hassan to the bus where he joined the other students for the return trip to Whiteside Elementary. Once back at the school, Thomas had Hassan tell the class about his behavior and the resulting punishment, informing them what, if anything, he had learned from the experience.

The next day Williams met with Hassan's parents to explain the incident. He apologized for placing Hassan in a situation of which they did not approve, but insisted that the trip had been a positive experience for Hassan. Manifesting disagreement, Hassan's parents removed him from Whiteside Elementary and enrolled him in another school.

The instant action under 42 U.S.C. § 1983 followed, claiming that LISD, Williams, Thomas, and Atkins violated Ameen Hassan's fourth amendment right against unreasonable seizures, fourteenth amendment due process rights, and eighth amendment right to be free from cruel and unusual punishment.[2] The complaint also claims that Thomas violated Hassan's first amendment right to free association by ordering Hassan to leave the school grounds when he went there to play with his friends after transferring schools. The district court dismissed the eighth and first amendment claims under

---

[2]The amended original complaint also alleges false imprisonment, but Hassan maintains that all of his claims are based on federal law and we accordingly treat the false imprisonment claim as part of the fourth amendment seizure claim.

Fed.R.Civ.P. 12(b)(6);  Hassan did not appeal those dismissals.

The LISD, Williams, Thomas, and Atkins moved for summary judgment on the fourth and fourteenth amendment claims on two grounds:  (1) the LISD could not be held liable because its employees did not act pursuant to an official policy or custom, and (2) the individual defendants were entitled to qualified immunity. The district court denied the motions for summary judgment and the defendants timely appealed.

*Analysis*

At the outset, we note that we have jurisdiction over the appeal by Williams, Thomas, and Atkins of the district court's denial of qualified immunity under *Mitchell v. Forsyth,*[3] which held that such denials, to the extent that they turn on a question of law, were final judgments for the purposes of appellate jurisdiction. The LISD appeals the district court's denial of its defense of absolute immunity to Hassan's apparent state law false imprisonment claim.[4]  Hassan, however, maintains in brief that all of his claims arise under federal law.  Because of this clarification, the LISD no longer advances its claim of absolute immunity.  LISD offers no other jurisdictional basis for its appeal.  We therefore dismiss same for lack of appellate jurisdiction.

---

[3]472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) (allowing interlocutory appeal of denial of qualified immunity under the collateral order doctrine).

[4]*See Loya v. Texas Dep't of Corrections,* 878 F.2d 860 (5th Cir.1989) (allowing entity to appeal denial of absolute immunity).

4

We review a district court's denial of summary judgment *de novo,* applying the same standard as the district court. "Summary judgment is proper when no issue of material fact exists and the moving party is entitled to judgment as a matter of law. In determining whether summary judgment was proper, all fact questions are viewed in the light most favorable to the non-movant. Questions of law are reviewed ... *de novo.*"[5]

In examining the claims of qualified immunity on summary judgment, we first inquire whether Hassan has alleged "the violation of a clearly established constitutional right."[6] For a right to be clearly established, there does not have to be a prior case directly on point, but the unlawfulness of the precipitating acts must be apparent in light of the existing law.[7] We then inquire whether the defendants' conduct was objectively reasonable " "in light of the legal rules clearly established at the time' of

---

[5]*Moore v. Eli Lilly & Co.,* 990 F.2d 812, 815 (5th Cir.) (citations omitted), *cert. denied,* --- U.S. ----, 114 S.Ct. 467, 126 L.Ed.2d 419 (1993).

[6]*Siegert v. Gilley,* 500 U.S. 226, 231, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991) (outlining two step process for evaluating qualified immunity claims).

[7]*Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Hassan insists his rights under the fourth and fourteenth amendments were clearly established at the time of the incident and that the first inquiry is therefore satisfied. The determination whether a right is "clearly established" is a more particularized inquiry than Hassan suggests; otherwise, plaintiffs could "convert the rule of qualified immunity ... into a rule of virtually unqualified liability." *Id.* at 639, 107 S.Ct. at 3039. The proper inquiry is whether a reasonable official would know that the act in question was unlawful. *Id.* at 640, 107 S.Ct. at 3039. It necessarily follows that a right is not clearly established if there is no actual constitutional violation alleged. *Siegert.*

5

the incident in issue."[8]  Thus, even if we find a violation of Hassan's constitutional rights, the individual defendants are immune from liability if reasonable public officials could differ on the lawfulness of their actions.[9]  The court need not reach this second inquiry, however, if Hassan fails to tender the requisite summary judgment evidence that the individual defendants violated a clearly established constitutional right.[10]

In his first claim, Hassan alleges that the acts of Williams, Thomas, and Atkins violated his fourth amendment right to be free from an unreasonable seizure.  This constitutional right extends to seizures by or at the direction of school officials, but whether such a seizure is unreasonable depends on all relevant contextual circumstances.[11]  The Supreme Court has recognized the unique backdrop that schools present for the operation of the fourth amendment, specifically noting that "the preservation of order and a proper educational environment requires close supervision of schoolchildren, as well as the enforcement of rules against conduct that would be perfectly permissible if undertaken by an adult."[12] Thus, while school officials are subject to the limitations of the

---

[8]*Spann v. Rainey,* 987 F.2d 1110, 1114 (5th Cir.1993) (citing *Salas v. Carpenter,* 980 F.2d 299, 310 (5th Cir.1992)).

[9]*Blackwell v. Barton,* 34 F.3d 298 (5th Cir.1994).

[10]*Siegert;  Blackwell.*

[11]*New Jersey v. T.L.O.,* 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985) (finding search of student by principal constitutional).

[12]*Id.* at 339, 105 S.Ct. at 741.

fourth amendment, the reasonableness of seizures must be determined in light of all of the circumstances, with particular attention being paid to whether the seizure was justified at its inception and reasonable in scope.[13]

At the time of the instant seizure, Hassan was touring a juvenile detention center as part of a school-sponsored educational field trip. The two school officials supervising the trip, Williams and Thomas, were charged with the care and control of all of the students. The detention center contained both older and younger youths awaiting adjudication for criminal offenses, or residing at the center following adjudication for criminal offenses; these surroundings understandably heightened the need for a disciplined attitude by the visiting students to ensure their safety and to maintain order among the residents of the facility. In this setting Hassan misbehaved.[14] We are fully cognizant that teachers routinely find it necessary to punish such behavior. Williams and Thomas, aware of their responsibilities, responded to Hassan's behavior by separating and isolating him until the other students had finished their tour. We entertain no doubt that these actions properly furthered the mandated maintenance of discipline within the touring group, thus making it possible for the other

---

[13]*Edwards v. Rees,* 883 F.2d 882 (10th Cir.1989) (applying reasonableness test announced in *T.L.O.* for school searches to a school seizure case); *Hayes v. Unified Sch. Dist., 377,* 669 F.Supp. 1519 (D.Kan.1987) (applying *T.L.O.* framework to seizure claim of student), *rev'd on other grounds,* 877 F.2d 809 (10th Cir.1989).

[14]Hassan concedes in his affidavit that he was uncooperative and was reprimanded by Thomas.

students to continue their valuable educational experience.[15] We conclude that Hassan's seizure was reasonably justified at its inception.

The placement of Hassan in the holding room at the detention center was also reasonably related in scope to the relevant circumstances, thus justifying the action. The presence of other potentially dangerous juveniles militated against Hassan being left alone in an easily accessible area. The room into which Hassan was placed both protected him and allowed for his easy supervision. Further, this restriction of his freedom of movement lasted no longer than absolutely necessary.[16] He was released from the room as soon as the other students completed their visit. Under these circumstances, we find no violation of any of Hassan's clearly established constitutional rights by either Williams or Thomas.

Nor do we perceive anything in Atkins' role as a Center employee, or his actions in this incident, that warrants the

---

[15]We reject the suggestion that the location of this seizure heightens the otherwise relaxed fourth amendment standards applicable to school searches and seizures. School field trips often present greater, not lesser, challenges to school officials trying to maintain order and discipline than do the relatively orderly confines of a school. *See Webb v. McCullough,* 828 F.2d 1151 (6th Cir.1987) (holding that the greater challenges presented by field trips justify *in loco parentis* authority as well as official authority).

[16]While the duration of a seizure is normally irrelevant to the determination of its constitutionality, *see United States v. Brignoni-Ponce,* 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975), the Supreme Court's command in *T.L.O.* to examine *all* of the circumstances in the context of school searches and seizures leads us to conclude that the duration of a seizure is relevant to its constitutionality in the school setting. *See Edwards* (noting seizure of student lasted for 20 minutes).

application of a different standard to his conduct. He acted at the behest of school officials and at all times his control over Hassan remained subject to the direction of Thomas and Williams. There is no summary judgment evidence that Atkins used the school trip as a subterfuge for incarcerating Hassan;[17] rather, the evidence supports the conclusion that Atkins acted reasonably. We therefore conclude that Hassan has not shown that Atkins violated a clearly established fourth amendment right.

Hassan also claims that Williams, Thomas, and Atkins "incarcerated" him in a "jail cell" in violation of the due process clause of the fourteenth amendment. It is well established that children do not " "shed their constitutional rights' at the schoolhouse door"[18] and that deprivations of liberty in the school context may implicate both procedural and substantive due process liberty interests.[19] These rights, however, are circumscribed by the need for effective and often immediate action by school

---

[17]*See Martens v. Dist. No. 220, Bd. of Educ.,* 620 F.Supp. 29, 32 (N.D.Ill.1985) (noting that there was "no basis for thinking that school official action was a subterfuge to avoid warrant and probable cause requirements").

[18]*Goss v. Lopez,* 419 U.S. 565, 574, 95 S.Ct. 729, 736, 42 L.Ed.2d 725 (1975) (citing *Tinker v. Des Moines Indep. Community Sch. Dist.,* 393 U.S. 503, 506, 89 S.Ct. 733, 736, 21 L.Ed.2d 731 (1969)).

[19]*Wood v. Strickland,* 420 U.S. 308, 326, 95 S.Ct. 992, 1003, 43 L.Ed.2d 214 (1975) ("Public high school students do have substantive and procedural rights while at school."); *Goss* (recognizing that discipline can implicate procedural due process rights); *Jefferson v. Ysleta Indep. Sch. Dist.,* 817 F.2d 303 (5th Cir.1987) (finding allegations of teacher tying a student to a chair during school to allege a substantive due process violation).

officials to maintain order and discipline.[20] *De minimis* or trivial deprivations of liberty in the course of the disciplining of a student do not implicate procedural due process requirements.[21] Likewise, punishment does not implicate substantive due process concerns unless the action is "arbitrary, capricious, or wholly unrelated to the legitimate state goal of maintaining an atmosphere conducive to learning."[22]

We perceive no constitutional violation inherent in the detention of Hassan in the Center's intake room. The room was

---

[20]*Goss; Ingraham v. Wright,* 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977); *T.L.O.*

[21]*See Goss* (recognizing that *de minimis* deprivations do not implicate due process concerns); *Ingraham,* 430 U.S. at 674, 97 S.Ct. at 1414 ("There is, of course, a *de minimis* level of imposition with which the Constitution is not concerned."); *Dunn v. Tyler Indep. Sch. Dist.,* 460 F.2d 137, 144 (5th Cir.1972) ("Obviously school officials have available to them in day-to-day operation of schools a scope of summary punishment without even the limited type of hearing required in more serious circumstance[s]."). *See also Dickens v. Johnson County Bd. of Educ.,* 661 F.Supp. 155 (E.D.Tenn.1987) (finding that segregation of child to "timeout" box (refrigerator box) without notice or hearing did not implicate either procedural or substantive due process); *Fenton v. Stear,* 423 F.Supp. 767 (W.D.Pa.1976) (holding that assignment to a particular room and prohibition of participation with school trip to be *de minimis* interference with rights).

[22]*Ysleta,* 817 F.2d at 305-06 (citing *Woodard v. Los Fresnos Indep. Sch. Dist.,* 732 F.2d 1243 (5th Cir.1984)); *Wise v. Pea Ridge Sch. Dist.,* 855 F.2d 560 (8th Cir.1988) (holding in-school confinement to small room did not violate substantive due process rights); *Edwards,* 883 F.2d at 885 (rejecting a "cryptic" complaint of "right to be free from the restraints of the criminal justice system"); *Mitchell v. Bd. of Trustees of Oxford Mun. Separate Sch. Dist.,* 625 F.2d 660, 665 (5th Cir.1980) ("Because the rule and the punishment for violating the rule clearly are rationally related to the goal of providing a safe environment in which children can learn, it comports with substantive due process.").

relatively large with 80 square feet of space and was furnished with a toilet and a bed and had a glass partition in the door. Although Hassan could not leave the room, he was not otherwise physically restrained.[23] He remained under adult supervision and protection.

Nor do we equate the request of Williams and Thomas that Atkins physically remove Hassan so that the other students could proceed with their educational field trip with the turning of Hassan over to the state authorities for incarceration.[24] Hassan was not placed with the residents of the facility and the intake room was not located within the detention area. Putting Hassan in that room was done in response to his behavior and was a measure of punishment in a safe and supervised manner. This action made it possible for the other children to finish the planned visit to the facility. As noted above, Hassan's restraint was terminated immediately upon cessation of its need. Under these circumstances, we are persuaded beyond peradventure that the actions of Thomas, Williams, and Atkins amount to a *de minimis* deprivation of Hassan's liberty that does not implicate either procedural or substantive due process guarantees. We also conclude that Hassan's punishment was within the range of discretion accorded school officials and that the punishment bore a rational relationship to the goal of

---

[23]*Cf. Ysleta* (finding physical restraint of child by tying him to chair to be unconstitutional).

[24]The school officials clearly retained ultimate authority over Hassan at all times, even though they delegated that authority to Atkins to detain and watch Hassan while the other children completed the tour.

providing a valuable and safe educational experience for the other 102 children.

Hassan insists, and we do not disagree, that more appropriate means of punishment were available to the school officials. This argument, however, lacks persuasive force. That a better punishment may have been available does not establish that the punishment administered was unconstitutional. To so hold would run counter to the Supreme Court's affirmance of "the comprehensive authority of the States and of school officials, consistent with fundamental constitutional safeguards, to prescribe and control conduct in the schools."[25] Perceiving no summary judgment evidence of a constitutional violation, we conclude, as we must, that there is no violation of a clearly established constitutional right. We therefore need inquire no further. The trial court erred in denying qualified immunity to Thomas, Williams, and Atkins.

Accordingly, we REVERSE the denial of summary judgment for Williams, Thomas, and Atkins and render judgment in their favor. The trial court is to enter the appropriate decree. We DISMISS the appeal of LISD for lack of appellate jurisdiction.

DISMISSED IN PART, REVERSED AND RENDERED IN PART.

---

[25]*Tinker,* 393 U.S. at 507, 89 S.Ct. at 737.