**Latasha HARRIS, a minor, by her guardian ad litem, Lennard D. TUCKER, Plaintiff,**

v.

**COUNTY OF FORSYTH, Shannon Lloyd, Mariann Idol, Winston–Salem/Forsyth County Board of Education, and Jean Sinclair, Defendants.**

No. 6:94CV00208.

United States District Court, M.D. North Carolina, Winston–Salem Division.

March 28, 1996.

---

Raymond M. Marshall, Winston–Salem, NC, for Latasha Harris, a minor, by her GAL (guardian ad litem), Lennard D. Tucker.

Allan R. Gitter, Womble Carlyle Sandridge & Rice, Winston–Salem, NC, Ursula Marie Henninger, Womble Carlyle Sandridge & Rice, Winston–Salem, NC, for Shannon Lloyd, Mariann Idol and Ron Barker.

Stephen Roland Berlin, Petree Stockton, L.L.P., Winston–Salem, NC, Susan H. Cooper, Petree Stockton, Winston–Salem, NC, for Winston–Salem/Forsyth County Board of Education, and Jean Sinclair.

## MEMORANDUM OPINION

OSTEEN, District Judge.

This matter comes before the court on motions for summary judgment filed by (1) Defendants Sheriff Ron Barker, Shannon Lloyd, and Mariann Idol; (2) Defendants Winston–Salem/Forsyth County School Board and Jean Sinclair; and (3) Plaintiff Latasha Harris. Plaintiff is a former student in the Winston–Salem/Forsyth County School System who was placed in a holding cell for misbehaving during a class tour of the Forsyth County Detention Center. Plaintiff claims that Defendants' actions violated her constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiff also asserts state claims of false imprisonment, negligent infliction of emotional distress, and intentional infliction of emotional distress.

For the reasons discussed herein, Defendants' motions for summary judgment will be granted as to all of Plaintiff's claims. Plaintiff's motion for summary judgment will be denied.

## I. FACTUAL BACKGROUND

On March 25, 1993, Plaintiff Latasha Harris was a member of an eighth-grade class in the Winston–Salem/Forsyth County School System which toured the Forsyth County Detention Center. Before going on the field trip, the students were required to submit permission slips signed by a parent or guardian. Plaintiff submitted such a permission slip, signed by her mother, permitting Plaintiff to go on the tour. (L. Harris Dep. at 59–

60.) Before the students' arrival at the Detention Center, their teacher, Defendant Sinclair, explained the need to behave properly during the tour. (L. Harris Dep. at 62.) She specifically instructed the students not to talk during the tour. (Sinclair Aff. at 2.)

The students arrived by bus at the Detention Center where they immediately were met by officers employed by the Forsyth County Sheriff's Department. The officers frisked the students and then briefed them on the rules of conduct during the tour. (L. Harris Dep. at 28–29.) Officer Taylor instructed the students not to talk to or make gestures toward the inmates, not to talk among themselves, to keep their hands in their pockets, to stay to the right side of the hallways, and that no "laughing or clowning" would be allowed. (Lamendola Aff. at 2–3.) Officer Taylor stated that any student who failed to abide by the rules would be removed from the tour. (Lamendola Aff. at 2–3.)

The students were accompanied on the tour by their teacher, Defendant Jean Sinclair, and two Forsyth County deputy sheriffs, Defendants Lloyd and Idol. (Am.Compl. at ¶ 9.)

During the tour, in an enclosed area where inmates were visible through a glass partition, Plaintiff and two other students became disruptive by giggling and talking. (Am. Compl. at ¶ 10.) Defendant Sinclair and the officers instructed the students to be quiet. (Sinclair Aff. at 2.) Further along in the tour, Plaintiff and another student again were disruptive. The students again were instructed to be quiet. When Plaintiff was disruptive for a third time, Defendant Sinclair separated Plaintiff and the other student and placed Plaintiff in the back of the line. (Sinclair Aff. at 2.) Shortly thereafter, as the students entered a courtyard, Defendant Sinclair grabbed Plaintiff's arm and began talking to Plaintiff about her behavior and the importance of following the rules. (Sinclair Aff. at 2–3.) Plaintiff pulled away, flung her arms, and repeatedly told Defen-

dant Sinclair not to touch her. Defendant Sinclair then asked Defendant Lloyd to "do something" with Plaintiff because she (Defendant Sinclair) "couldn't handle [her]." (L. Harris Dep. at 24–25.)

Defendant Lloyd escorted Plaintiff to the front area of the Detention Center. While they were walking, Defendant Lloyd told Plaintiff "that it was as if [she] was resisting arrest and [she] was in the right place to be acting up—or the wrong place." (L. Harris Dep. at 24–25.) All safe and secure rooms where Plaintiff might have been placed to wait for the class were occupied or contained dangerous equipment.[1] Inmates were constantly passing through the hallways and lobby. Defendant Lloyd placed Plaintiff in the holding cell located in front of the control room. At least one deputy sheriff was in the control room at all times and could see into the holding cell. (Lloyd Aff. at 5–6.)

Plaintiff remained in the holding cell for approximately seven minutes, after which Defendant Sinclair joined Plaintiff in the cell. (L. Harris Dep. at 25.) Defendant Sinclair told Plaintiff that she (Plaintiff) was there because she "needed to be punished" and asked "did [she] understand why [she] was being placed in there." (L. Harris Dep. at 24–25.) Plaintiff was belligerent and would not listen to Defendant Sinclair. (Sinclair Aff. at 3.) Defendant Sinclair and Plaintiff left the holding cell and called Plaintiff's mother. Defendant Sinclair explained that Plaintiff would not be allowed to continue on the field trip to McDonald's Restaurant and requested that Plaintiff's mother come and get Plaintiff. (Sinclair Aff. at 4.) Plaintiff's mother refused Defendant Sinclair's request even though the mother was not working and owned a vehicle. Defendant Sinclair then called the school and advised the principal of the situation. The principal sent a school liaison officer to the Detention Center to return Plaintiff to the school. Defendant Sinclair waited with Plaintiff until the school liaison officer arrived. (Sinclair Aff. at 4.) Some time after the date of the incident,

---

1. Defendant Lloyd considered returning Plaintiff to the tour bus, but this alternative was not feasible because the bus driver was participating in the tour. (Lloyd Aff. at 5–6.) The control room also was not an option because that room

"is off limits to all persons not specifically assigned to work [there] because [it] is the nerve center of the Detention Center and controls all entrances and exits." (Lloyd Aff. at 5–6.)

**330**

Defendant Winston–Salem/Forsyth County School Board took the "official position" that Defendant Sinclair had done nothing wrong. (Am.Compl. at ¶ 15.) As a result of Defendants' actions, Plaintiff claims that she has suffered severe emotional distress. (Am. Compl. at ¶ 17.)

## II. DISCUSSION

Motions for summary judgment have been filed in this case by: (1) Defendants Sheriff Ron Barker, Shannon Lloyd, and Mariann Idol; (2) Defendants Winston–Salem/Forsyth County School Board and Jean Sinclair; and (3) Plaintiff Latasha Harris.

### A. *Summary Judgment Principles*

■ Summary judgment is appropriate in those cases where it is established through pleadings, affidavits, depositions, and other discovery documents that there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Thus, it is the burden of the moving party to show the court that no material factual issues exist for trial. Of course, the court must draw any permissible inference from the underlying facts as established in the record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986), *cert. denied,* 481 U.S. 1029, 107 S.Ct. 1955, 95 L.Ed.2d 527 (1987); *Pulliam Inv. Co. v. Cameo Prop.*, 810 F.2d 1282, 1286 (4th Cir. 1987).

■ When the moving party has carried its burden, the nonmoving party must come forward with evidence which shows more than some "metaphysical doubt" that genuine and material factual issues exist. *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356. A mere scintilla of evidence presented by the nonmoving party is insufficient to circumvent summary judgment. *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512. Rather, the nonmoving party must convince the court that, upon the record taken as a whole, a rational trier of fact could find for the nonmoving party. *Id.* at 248–49, 106 S.Ct. at 2510–11.

Defendants carry their initial burden of showing that there are no material issues of fact for a jury to decide. In response to Defendants' motions for summary judgment, Plaintiff fails to carry her burden of convincing the court that, upon the record taken as a whole, a rational trier of fact could find in her favor. Rather, Defendants show that they are entitled to judgment as a matter of law.

Although Plaintiff carries her initial burden of showing that there are no material issues of fact for a jury to decide, she fails to show that she is entitled to judgment as a matter of law on any of her claims. Rather, Defendants show that they are entitled to judgment as a matter of law.

For the reasons discussed below, the court finds that all of Plaintiff's claims are subject to summary judgment in Defendants' favor.

### B. *42 United States Code Section 1983*

Plaintiff's Amended Complaint asserts a claim under 42 U.S.C. § 1983, claiming that Defendants violated Plaintiff's Fourth Amendment right against unreasonable seizures, Fourteenth Amendment due process rights, and Eighth Amendment right to be free from cruel and unusual punishment.

■ In her brief in support of summary judgment (which she also submits as her response to Defendants' motions for summary judgment), Plaintiff fails to address or even mention 42 U.S.C. § 1983, the Fourth Amendment, or the Eighth Amendment. Rather, Plaintiff argues for twenty pages that Defendants' acts were in violation of the North Carolina Constitution, a claim that Plaintiff never made in the Amended Complaint. Plaintiff vaguely mentions the Fourteenth Amendment, but only in support of her baseless argument that Plaintiff had a constitutional right not to be allowed to enter the Detention Center for the tour, not in regard to Plaintiff's confinement in the holding cell. Therefore, the court could, pursuant to Local Rule 206(e), dismiss Plaintiff's Fourth, Eighth, and Fourteenth Amendment claims under 42 U.S.C. § 1983 as having

been abandoned. However, in the interest of justice, the court will address Plaintiff's federal claims in full and will grant summary judgment in Defendants' favor.

Defendants have moved for summary judgment on Plaintiff's section 1983 claim on the bases that (1) the individual Defendants are entitled to qualified immunity; and (2) Defendant Sheriff Barker cannot be held liable in his official capacity under section 1983.[2]

### 1. The Individual Defendants are Entitled to Qualified Immunity.

■ The individual Defendants have moved for summary judgment on Plaintiff's section 1983 claim on the basis that they are entitled to qualified immunity. "Qualified immunity shields government officials from [section] 1983 liability, as long as 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Carter v. Shires*, 56 F.3d 60 (4th Cir.1995) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). Thus, the court's first inquiry is whether Plaintiff has alleged a "violation of a clearly established constitutional right." *Siegert v. Gilley*, 500 U.S. 226, 231, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991), *reh'g denied*, 501 U.S. 1265, 111 S.Ct. 2920, 115 L.Ed.2d 1084 (1991).

■ "For a right to be clearly established, there does not have to be a prior case directly on point, but the unlawfulness of the precipitating acts must be apparent in light of the existing law." *Hassan v. Lubbock Indep. Sch. Dist.*, 55 F.3d 1075, 1078 (5th Cir.1995) (citing *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)), *cert. denied*, —— U.S. ——, 116 S.Ct. 532, 133 L.Ed.2d 438 (1995). In the case at hand, however, there is case law directly on point. Although the Fourth Circuit has not addressed the factual circumstances presented by Plaintiff's claim, the Fifth Circuit recently ruled on a very similar case and found no constitutional violation. *Hassan*, 55 F.3d 1075.

In *Hassan*, a sixth-grade student, Hassan, was on a school-sponsored jail tour, accompanied by the school principal and a teacher. Hassan was cautioned repeatedly for being inattentive and disrespectful. When Hassan persisted, the teacher and principal asked an officer to place him in a holding cell while the other students continued the tour. Hassan remained in the holding cell, monitored by jail employees, for approximately fifty minutes. *Id.* at 1078.

Like Plaintiff, Hassan brought an action under 42 U.S.C. § 1983, claiming violations of his rights under the Fourth, Eighth, and Fourteenth Amendments. The district court dismissed the Eighth Amendment claim under Fed.R.Civ.P. 12(b)(6), and denied the defendants' motions for summary judgment on the Fourth and Fourteenth Amendment claims. The Fifth Circuit Court of Appeals reversed the district court and held that the school officials and jail employee were entitled to qualified immunity from liability. The circuit court so held because it found that Hassan had suffered no violation of his constitutional rights. *Id.* at 1082. The Court explained its holding as follows:

> [Although] [i]t is well established that children do not "'shed their constitutional rights' at the schoolhouse door[,]" ... [such rights] are circumscribed by the need for effective and often immediate action by school officials to maintain order and discipline. *De minimis* or trivial deprivations of liberty in the course of the disciplining of a student do not implicate procedural due process requirements.
>
> ....
>
> Putting Hassan in that room was done in response to his behavior and was a measure of punishment in a safe and supervised manner. This action made it possible for the other children to finish the planned visit to the facility.

*Id.* at 1080–81.

The court further stated that:

> School field trips often present greater, not lesser challenges to school officials trying to maintain order and discipline than

**2.** This court previously dismissed Plaintiff's section 1983 claim against the Winston–Salem/Forsyth County School Board pursuant to Fed.R.Civ.P. 12(b)(6). (Opinion of April 11, 1995.)

do the relatively orderly confines of a school.

*Id.* at 1080 & n. 15.

> [T]he [ ] surroundings understandably heightened the need for a disciplined attitude by the visiting students to ensure their safety and to maintain order among the residents of the facility. In this setting Hassan misbehaved.... [The principal and teacher], aware of their responsibilities, responded to Hassan's behavior by separating and isolating him until the other students had finished their tour. We entertain no doubt that these actions properly furthered the mandated maintenance of discipline within the touring group, thus making it possible for the other students to continue their valuable educational experience.

*Id.* at 1080. Under these circumstances, the court found that the actions of the principal, teacher, and officer "amount[ed] to a *de minimis* deprivation of Hassan's liberty that does not implicate either procedural or substantive due process guarantees." *Id.* at 1081. The court also concluded that "Hassan's punishment was within the range of discretion accorded school officials and that the punishment bore a rational relationship to the goal of providing a valuable and safe educational experience for the other ... children." *Id.* The court elaborated on this holding as follows:

> The placement of Hassan in the holding room at the detention center was [ ] reasonably related in scope to the relevant circumstances, thus justifying the action. The presence of other potentially dangerous [inmates] militated against Hassan being left alone in an easily accessible area. The room into which Hassan was placed both protected him and allowed for his easy supervision. Further, this restriction of his freedom of movement lasted no longer than absolutely necessary. He was released from the room as soon as the other students completed their visit.

*Id.* at 1080. Finding no constitutional violation, the court rendered judgment in the defendants' favor. *Id.* at 1082.

▮▮▮ Like Hassan, Plaintiff misbehaved in a setting where there was a "heightened

[ ] need for a disciplined attitude by the visiting students to ensure their safety and to maintain order among the residents of the facility." *Id.* at 1080. In fact, Plaintiff admitted in her deposition that she was instructed regarding the rules for the tour and that she did not abide by those rules. (L. Harris Dep. at 29–30, 61–63.) In response to her misconduct, and finding no other safe place for Plaintiff to wait, Defendant Officer Lloyd placed Plaintiff in a holding cell. Plaintiff remained in the holding cell for seven minutes—a period forty-three minutes shorter than the period Hassan spent in a holding cell for similar behavior. Finally, the restriction of Plaintiff's freedom, like Hassan's, lasted no longer than absolutely necessary. Plaintiff was released from the holding cell as soon as her teacher could ensure the safety of the other students and return to Plaintiff. Under these circumstances, this court finds that Defendants' actions amounted to a de minimis deprivation of Plaintiff's liberty that does not implicate either procedural or substantive due process guarantees. The court further finds that Plaintiff's punishment was "within the range of discretion accorded school officials and that the punishment bore a rational relationship to the goal of providing a valuable and safe educational experience for the other [ ] children." *Id.* at 1081. Finally, the court finds no basis for Plaintiff's cruel and unusual punishment claim, as the Eighth Amendment does not apply to discipline of schoolchildren, *Ingraham v. Wright,* 430 U.S. 651, 671, 97 S.Ct. 1401, 1413, 51 L.Ed.2d 711, 730 (1977); and, in any event, the punishment, though atypical, was not cruel in light of the circumstances.

Because the court finds no constitutional violation at all, the court certainly finds no violation of a "clearly established" constitutional right. Moreover, having found no constitutional violation, there is no need for the court to reach the second inquiry for absolute immunity: whether the statutory or constitutional right that was violated was one of which a reasonable person would have known. Because the court finds that the individual Defendants are entitled to qualified immunity, the court will enter summary

judgment in favor of the individual Defendants on Plaintiff's section 1983 claim.

### 2. *Defendant Sheriff Barker Cannot Be Held Liable in His Official Capacity Under Section 1983.*

Defendant Sheriff Barker has moved for summary judgment on Plaintiff's section 1983 claim against him in his official capacity on three bases: (1) he cannot be held liable because he is not a "person" within the meaning of section 1983; (2) the alleged violation was not a result of an official policy or custom; and (3) section 1983 liability cannot be predicated on a respondeat superior theory.

■ Section 1983 permits actions only against "persons" who deprive others of rights, privileges, or immunities secured by the Constitution and laws. 42 U.S.C. § 1983 (1992). The United States Supreme Court has held that neither a state nor its officers acting in their official capacities are "persons" for purposes of section 1983 liability. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989). Thus, if Sheriff Barker is a state officer, he may not be held liable in his official capacity for constitutional violations under section 1983.

■ Whether a sheriff is a state officer is a question of state law. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481–82, 106 S.Ct. 1292, 1299–1300, 89 L.Ed.2d 452 (1986). In the most recent opinion on point, the North Carolina Court of Appeals specifically held that a sheriff is a state officer, and therefore, when acting in his official capacity, is not a "person" under section 1983. *Messick v. Catawba County*, 110 N.C.App. 707, 713–14, 431 S.E.2d 489, 493, *review denied*, 334 N.C. 621, 435 S.E.2d 336 (1993). Because Sheriff Barker is not a "person" who may be liable for constitutional violations under section 1983, summary judgment on this claim is appropriate in his favor.

■ Even if Sheriff Barker were a "person" within the meaning of section 1983, summary judgment in his favor still would be proper on this claim. In order to state a viable claim against the sheriff in his official capacity, Plaintiff must allege and prove (1) that her rights were unconstitutionally deprived; and (2) that the deprivation of her rights was a result of an unconstitutional policy implemented by the sheriff. *Monell v. Dep't of Social Serv.*, 436 U.S. 658, 659, 98 S.Ct. 2018, 2019, 56 L.Ed.2d 611 (1978). As discussed above, this court has found that Plaintiff was not deprived of any constitutional right. Moreover, Plaintiff has presented this court with no evidence of any unconstitutional policy or custom on the part of Sheriff Barker. Although Plaintiff alleges that Sheriff Barker customarily allowed tours of the Detention Center, the court finds nothing unconstitutional about this policy or custom. Therefore, summary judgment in Defendant Sheriff Barker's favor is proper on this claim.

Having found the first two bases supporting Sheriff Barker's motion for summary judgment to be sufficient, the court finds it unnecessary to address the third. The court will enter summary judgment in Defendant Sheriff Barker's favor.

### C. *State Claims*

In addition to her federal claims, Plaintiff asserts state claims of false imprisonment, negligent infliction of emotional distress, and intentional infliction of emotional distress.

Because Plaintiff fails to address any of these claims in her brief in support of her motion for summary judgment (which she also submits as her response to Defendants' motions for summary judgment), the court could, pursuant to Local Rule 206(e), dismiss these claims as having been abandoned. However, in the interest of justice, the court will address Plaintiff's state claims in full and will grant summary judgment in Defendants' favor.

### 1. *False Imprisonment*

■ "False imprisonment is the unlawful and total restraint of the liberty of a person against his will." *Harwood v. Johnson*, 326 N.C. 231, 242, 388 S.E.2d 439, 445, *reh'g denied*, 326 N.C. 488, 392 S.E.2d 90 (1990); Restatement (Second) of Torts § 35 (1964). Plaintiff's false imprisonment claim fails for

two reasons: (1) Plaintiff's confinement was not unlawful; and (2) the restraint of Plaintiff's liberty was not against her will.

As the Fifth Circuit recognized in *Hassan*, there is a heightened need for discipline of schoolchildren on a jail tour. *Hassan*, 55 F.3d at 1080 & n. 15. Plaintiff's behavior jeopardized the safety of all the children on the tour and threatened the maintenance of order among the residents of the facility. In the absence of any other safe place, Plaintiff was placed in a holding cell to wait while the other students finished the tour. As discussed above, the court finds that this action was "within the range of discretion accorded school officials and that the punishment bore a rational relationship to the goal of providing a valuable and safe educational experience for [all] the ... children," including Plaintiff. *Id.* at 1081. Moreover, Plaintiff has offered no authority that supports a conclusion that her brief confinement was unlawful and the court finds none. Consistent with existing authority known to this court and in the absence of contrary authority presented by Plaintiff, the court finds that Plaintiff's brief confinement in the holding cell was lawful. Thus, summary judgment for Defendants is proper on this claim.

 Even if the court had found Plaintiff's confinement to be unlawful, summary judgment in Defendants' favor still would be proper on this claim because the restraint of Plaintiff's liberty was not against her will. At the moment Plaintiff entered the Detention Center, Plaintiff was deprived of her liberty. She knew when she entered that her movement was at the discretion of the guiding officers, that she would not be allowed freedom to move about as she chose, and that she would not be allowed to leave the Detention Center until the end of the tour. Further, every step Plaintiff took on the tour was preceded by an officer unlocking a door, allowing the students into a room, and then locking the door behind them. In fact, the tour began with all the students being locked in the holding cell for a few minutes. (Lloyd Aff. at 2.) Thus, at all relevant times, Plaintiff and every other student on the tour was under the complete control of the Detention Center staff. The

fact that Plaintiff was confined in a different locked room than the locked rooms in which the other students were confined does not give rise to an action for false imprisonment. Plaintiff freely gave up her freedom of movement by participating in the tour. Thus, the court finds that Plaintiff's confinement in the holding cell for no longer than the length of the tour will not give rise to a claim for false imprisonment. For this reason, and because Plaintiff's confinement was lawful, the court will enter summary judgment in Defendants' favor on this claim.

### 2. Negligent Infliction of Emotional Distress

 A claim for negligent infliction of emotional distress requires that Plaintiff allege and prove that (1) Defendants engaged in negligent conduct; (2) it was reasonably foreseeable that such conduct would cause Plaintiff severe emotional distress; and (3) the conduct did in fact cause Plaintiff severe emotional distress. *Johnson v. Ruark Obstetrics and Gynecology Assoc.*, 327 N.C. 283, 304, 395 S.E.2d 85, 97 (1990). This claim is subject to summary judgment in Defendants' favor because Plaintiff has failed to raise a material issue of fact as to whether she actually suffered severe emotional distress.

 Severe emotional distress, in the context of an intentional or negligent infliction of emotional distress claim means:

> any ... type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so.

*Waddle v. Sparks*, 331 N.C. 73, 83, 414 S.E.2d 22, 27 (1992) (quoting *Johnson v. Ruark*, 327 N.C. at 304, 395 S.E.2d at 97). In order for Plaintiff's claim to survive summary judgment, Plaintiff must allege facts and medical documentation that tend to show that Plaintiff has suffered such severe emotional distress. *Id.* In a recent case, *Waddle v. Sparks*, the North Carolina Supreme Court granted the defendant's motion for summary judgment on the plaintiff's emotional distress claims because the plaintiff failed to offer such evidence in defense of summary judgment. *Id.* The court stated

that summary judgment was appropriate because there was:

no forecast of any medical documentation of plaintiff's alleged "severe emotional distress" nor any other forecast of evidence of "severe and disabling" psychological problems within the meaning of the test laid down in *Johnson v. Ruark*....

*Id.* at 85, 414 S.E.2d at 28 (quoting *Johnson v. Ruark*, 327 N.C. at 304, 395 S.E.2d at 97). Like the plaintiff in *Waddle*, Plaintiff Harris has not and cannot produce the required evidence to show that she has suffered severe emotional distress. Plaintiff has failed to provide any expert report or to designate an expert regarding this claim within the time period set by the court.[3] Moreover, although Plaintiff testified that she saw a psychologist sometime in 1994, Plaintiff stated that the psychologist did not diagnose her with any mental illness nor prescribe any medication.[4] Consequently, Plaintiff has not and cannot provide sufficient evidence, expert or otherwise, tending to show that she has suffered severe emotional distress. Therefore, summary judgment in Defendants' favor is proper on this claim.

Even if Plaintiff had alleged facts tending to show severe emotional distress, her negligent infliction of emotional distress claim still would fail as to Defendants Sheriff Barker, Lloyd, and Idol because they are entitled to public officers' immunity. It is well settled in North Carolina that a public officer engaged in the performance of a governmental function involving the exercise of discretion may not be held liable for acts of negligence unless his act, or failure to act, was corrupt or malicious. *Smith v. Hefner*, 235 N.C. 1, 7, 68 S.E.2d 783, 787 (1952). Thus, "as long as a public officer lawfully exercises the judgment and discretion with which he is vested by virtue of his office, keeps within the scope of his official authority, and acts without malice or corruption, he is protected from liability." *Smith v. State*, 289 N.C. 303, 331, 222 S.E.2d 412, 430 (1976).

Whether Defendants Sheriff Barker, Lloyd, and Idol are public officers is a question of state law. In North Carolina, sheriffs and deputy sheriffs are public officers. *Messick v. Catawba County*, 110 N.C.App. 707, 713–14, 431 S.E.2d 489, 493, *review denied*, 334 N.C. 621, 435 S.E.2d 336 (1993). Thus, as long as Defendants acted within the scope of their official authority and lawfully exercised their official discretion, they can only be liable to Plaintiff if they acted corruptly or maliciously. *Smith v. State*, 289 N.C. at 331, 222 S.E.2d at 430. As discussed above, the court has found that Defendants acted within the scope of their official authority and lawfully exercised their official discretion. Plaintiff has alleged no facts showing that Defendants acted corruptly or maliciously and the court finds none. Therefore, in addition to the above basis for summary judgment in Defendants' favor, Defendants Sheriff Barker, Lloyd, and Idol are entitled to summary judgment on this claim because they are protected by public officers' immunity.

3. *Intentional Infliction of Emotional Distress*

A claim for intentional infliction of emotional distress requires allegations and proof of (1) extreme and outrageous conduct (2) which is intended to cause and does cause (3) severe emotional distress. *Briggs v. Rosenthal*, 73 N.C.App. 672, 676, 327 S.E.2d 308, 311, *cert. denied*, 314 N.C. 114, 332 S.E.2d 479 (1985).[5] As discussed above,

---

**3.** Plaintiff's expert reports were due by August 15, 1995.

**4.** Incidentally, during Plaintiff's mother's deposition, Plaintiff's counsel instructed the mother not to answer any questions regarding what the psychologist told her about his examination of Plaintiff. (B. Harris Dep. at 47–52.) The mother stated later in her deposition that the psychologist diagnosed Plaintiff as having some type of condition, but that she did not know what type of condition it was. (B. Harris Dep. at 85.) While this evidence may tend to show that Plaintiff suffered some kind of stress, it is insufficient to raise a material question of fact as to whether Plaintiff suffered the severe emotional distress required for a claim of negligent or intentional infliction of emotional distress.

**5.** "The tort may also exist where a defendant's actions indicate a reckless indifference to the likelihood that they will cause severe emotional distress." *Dickens v. Puryear*, 302 N.C. 437, 452, 276 S.E.2d 325, 335 (1981).

Plaintiff has not and cannot produce the required evidence to show that she has suffered severe emotional distress as a result of Defendants' actions. Thus, this claim, like her negligent infliction of emotional distress claim, is subject to summary judgment in Defendants' favor.

## V. CONCLUSION

For the reasons discussed herein, Defendants' motions for summary judgment will be granted as to all of Plaintiff's claims. Plaintiff's motion for summary judgment will be denied.

A judgment in accordance with this memorandum opinion shall be filed contemporaneously herewith.

## *JUDGMENT*

For the reasons set forth in the memorandum opinion entered contemporaneously herewith,

IT IS ORDERED AND ADJUDGED that Defendants' motions for summary judgment are granted as to all of Plaintiff's claims.

IT IS FURTHER ORDERED AND ADJUDGED that Plaintiff's motion for summary judgment is denied.

Because the court has considered Plaintiff's and Defendants' motions for summary judgment in full Defendants' Joint Motion to Strike (Plaintiff's motion for summary judgment and asserted response) is denied.

The court will enter a separate ruling concerning Plaintiff's *Motion To Be Relieved Of Obligation To Pay Mediator.*