IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 95-20628
_____

KELVIN WASHINGTON,

                                        Plaintiff-Appellant,

                    versus

HCA HEALTH SERVICES OF TEXAS, INC.,
doing business as HCA Spring Branch
Medical Center,

                                        Defendant-Appellee.

_____

Appeal from the United States District Court for the
Southern District of Texas
(CA-H-94-1831)
_____
June 26, 1996
Before REAVLEY, GARWOOD, and JOLLY, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:[*]

Kelvin Washington appeals the district court's summary judgment in favor of HCA Health Services of Texas, Inc., doing business as Spring Branch Medical Center, on his disability discrimination claim under the Americans with Disabilities Act of 1990 ("ADA"). Having thoroughly reviewed the record, we conclude that HCA was not entitled to summary judgment. Although HCA

_____

[*]Pursuant to Local Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

contends that it merely followed its seniority system in determining who would be laid off, there exists a genuine issue of material fact as to whether Washington's lay-off was motivated by discriminatory animus in violation of the ADA in view of the discretion exercised in selecting the positions within which the lay-offs occurred. We therefore reverse the judgment of the district court and remand for further proceedings consistent with this opinion.

I

HCA's Spring Branch Medical Center employed Washington from September 26, 1991, until his lay-off on August 10, 1993. Washington suffers from Adult Stills disease, a degenerative disease affecting the bones and joints. Stress and rigorous work schedules apparently exacerbate the disease and make it more difficult to control with medication. Early in 1993, Washington was working twelve- to sixteen-hour work days. In May 1993, Washington passed out at work and required emergency room treatment. After this incident, Washington gave Lynne Mitchell, his supervisor and the head of the accounting department at Spring Branch, a letter dated June 1, 1993, from his doctor indicating that his disease required that he work no more than ten hours per day for five consecutive days. Washington claims in an affidavit filed in response to HCA's motion for summary judgment that

Mitchell told him that "unless [he] worked the additional hours, [he] would not have [his] job."

On June 7, 1993, Washington's attorney wrote to Spring Branch's director of human resources, Carole Melville, advising her of the doctor's letter and requesting an accommodation of Washington's disability under the ADA. Washington alleges in his affidavit that Melville told him that "management was `unhappy' about receiving this letter from [his] lawyer." Even after the letter from his attorney, Washington still continued to work in excess of fifty hours per week. It was not until "some point in late July or early August of 1993" that Washington limited his hours to fifty per week. He claims he was then told that he was not working hard enough.

On August 10, 1993, HCA laid off Washington and eight other employees working in different departments. These lay-offs were part of Spring Branch's hospital-wide reduction in force in which seventeen employees were laid off in 1993, including two other employees in Washington's department, a cash control clerk in February and a clerk-receptionist in October.

In April 1994, Washington filed this action in Texas state court. HCA subsequently removed the suit to federal court. HCA filed a motion for summary judgment in March 1995, arguing, inter alia, that Washington was laid off for a non-discriminatory reason

and that Washington had offered no evidence to show that its proffered reason was a pretext for discrimination. Specifically, HCA argued that the decision to lay off Washington was based on seniority in accordance with Spring Branch's Staff Reduction Policy. That policy directs, "Selection of employees for layoff or reduction in hours will generally be made by seniority . . . ." Washington held one of the two senior accountant positions targeted for reduction. The other senior accountant, Grace Willette, was hired by HCA in February 1989, five months before Washington began work at another HCA-owned facility and more than two years prior to Washington's transfer to Spring Branch. HCA therefore claimed that the lay-off was the result of "a non-discriminatory policy implemented without any regard to [Washington's] disability."

Declaring that Washington failed to offer evidence that would raise an issue of material fact as to whether HCA's proffered reason for his layoff was false, the district court granted HCA summary judgment on May 18, 1995. This timely appeal followed.

II

A

We review a district court's grant of summary judgment de novo, applying the same standard as the district court. Neff v. American Dairy Queen Corp., 58 F.3d 1063, 1065 (5th Cir. 1995), cert. denied, 116 S.Ct. 704 (1996). Summary judgment is

-4-

appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED.R.CIV.P. 56(c).  For purposes of the summary judgment determination, all fact questions are viewed in the light most favorable to the nonmovant.  Hassan v. Lubbock Indep. Sch. Dist., 55 F.3d 1075, 1078 (5th Cir.), cert. denied, 116 S.Ct. 532 (1995).

B

The question before us is whether Washington has adduced sufficient countervailing evidence to create a fact question whether HCA's proffered non-discriminatory reason of seniority was pretextual and that Washington's disability was a motivating factor in his discharge.  We conclude that he did.

Attached to Washington's response to HCA's motion for summary judgment was a portion of the deposition of Mitchell, the head of the accounting department and Washington's department head.  The deposition reveals that the hospital administration gave her complete authority to select the position to be eliminated:

    Q.    And when did you find out that that would be
          Kelvin's position, senior accountant?
    A.    Well, administration met with each department
          director that was going to have to cut staff;
          and they left it up to the department director

-5-

> to decide where they could afford to cut the
> most.
> Q. Who was the department director in this area?
> A. I was.
> * * *
> Q. And it was your choice as to which position
> would be eliminated then, correct?
> A. I made the final decision, yes.
> Q. Okay. What kind of input did you get in terms
> of making the choice as to which position
> would be eliminated?
> A. I spoke with the supervisors I had from my
> department, and we basically came up with who
> we felt like we could afford to do without at
> that point based on the job duties in our
> office.
> * * *
> Q. Could you have made a decision to eliminate an
> accounting supervisor?
> A. Yes.

This evidence undercuts HCA's proffered non-discriminatory reason for the lay-off. The fact that Washington's lay-off was based on his lack of seniority in the senior accountant position does nothing to explain Mitchell's reason for targeting Washington's position as opposed to other positions in the accounting department in the first place. Coupled with the allegations appearing in Washington's affidavit concerning hostile comments made by Mitchell and other management personnel at Spring Branch, Washington's summary judgment evidence shows that there continues to be a genuine issue of material fact whether Washington's lay-off was motivated by discriminatory animus in violation of the ADA.

III

For the foregoing reasons, we REVERSE the summary judgment of the district court and REMAND for further proceedings consistent with this opinion.

REVERSED and REMANDED.