**Dominique DeFELICE, a minor suing By and Through her mother and next Friend, Valerie DeFELICE, Plaintiff,**

v.

**Ralph WARNER, Defendant.**

**Civ. No. 3:04CV02023(AWT).**

United States District Court, D. Connecticut.

Sept. 28, 2007.

---

John R. Williams, New Haven, CT, for Plaintiff.

Richard J. Buturla, Warren L. Holcomb, William Francis Clark, Berchem, Moses & Devlin, P.C., Milford, CT, for Defendant.

## RULING ON MOTION FOR SUMMARY JUDGMENT

ALVIN W. THOMPSON, District Judge.

Plaintiff Dominique DeFelice filed this lawsuit pursuant to 42 U.S.C. § 1983 alleging that defendant Ralph Warner violated her Fourth Amendment right to be free from unreasonable seizures of the person. The plaintiff also brings a state law claim for false imprisonment. The defendant has moved for summary judgment on the § 1983 claim on the basis of qualified immunity. For the reasons set forth below, the motion is being granted.

## I. BACKGROUND

At the time of the incident, the plaintiff was a 15–year–old freshman at the Sound School, a New Haven public high school, and the defendant was a school security aide employed by the New Haven Board of Education and assigned to the Sound School. The plaintiff's estranged sister, Amber DeFelice ("Amber"), was a junior at the Sound School.

On March 4, 2004, two students, Crystal Johnson ("Crystal") and Iesha Sydnor ("Iesha") informed the defendant that someone was spreading rumors that they were purchasing illegal drugs. The students also reported a concern about allegations that Amber's boyfriend, Mike, had been involved in an altercation with the plaintiff's father. The defendant brought the matter to the attention of Steve Ciarcia ("Ciarcia"), who was the Assistant to the Principal. Ciarcia instructed the defendant to obtain more information so they could advise the Principal, Steve Pynn ("Pynn").

Either Ciarcia or Crystal called the plaintiff out of class during a state-mandated examination and asked her to go into the defendant's office. Three female students, including Crystal and Iesha, and another security aide joined the plaintiff and the defendant in the office for a meeting. The plaintiff claims that the defendant told her she could go back to class at the end of the questioning. The security aide who accompanied the defendant kept his hand on the door knob for the duration of the meeting, which lasted from 20 to 30 minutes.

The plaintiff, who never asked if she could leave the room, claims that the meeting concerned topics including her parents' dislike for Amber's boyfriend, Mike, and rumors about two of the three students present purchasing crack cocaine after school. The plaintiff testified during her deposition that the participants in the meeting repeatedly demanded that the plaintiff persuade her parents that her sister's boyfriend is "a good person," suggested that the plaintiff and her parents "meet [Mike] and like him for [Amber's] benefit," and attempted to convince the plaintiff that "[Mike] would never do anything to harm [Amber]. . . ." (Pl. Dep. at 71–2.) The plaintiff also claims that Crystal repeatedly suggested that the plaintiff spend more time with Amber. The plaintiff contends that the defendant consistently supported the views of the other students during the meeting.

Although the defendant contends that he was investigating whether the plaintiff had

any knowledge about the sale or use of drugs or violence involving Amber and Mike, the defendant's own report does not mention this as the purpose for the meeting. Rather, the defendant stated in the report that he was attempting to find out who started rumors that two students (Crystal and Ieshia) were going to buy crack cocaine after school because Crystal and Ieshia were concerned about retaliation and their reputations. Other than the defendant's statements to his superior, the record does not contain any evidence of threats of violence at the school.

While the plaintiff was given permission to return to class at the end of the meeting, she had her mother take her home instead. The plaintiff claims she was nervous and cried after the meeting and vomited. Soon after the incident, the plaintiff approached the head of security for the New Haven Board of Education, who apologized to the plaintiff for the defendant's behavior and characterized the defendant's conduct as unprofessional. The head of security also suggested that the plaintiff report the incident to the New Haven Police Department.

The plaintiff claims she lost trust in the school officials and was emotionally unable to return to the Sound School. She completed her freshman year in a home-school program provided by Hamden High School. She completed her sophomore year at Lyman Hall High School and enrolled at Hamden High School for her junior year.

## II. LEGAL STANDARD

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law. Fed.R.Civ.P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106

S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1223 (2d Cir.1994). Rule 56(c) "mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *See Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. 2548.

When ruling on a motion for summary judgment, the court must respect the province of the jury. The court, therefore, may not try issues of fact. *See, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 58 (2d Cir. 1987); *Heyman v. Commerce & Indus. Ins. Co.*, 524 F.2d 1317, 1319–20 (2d Cir. 1975). It is well-established that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of the judge." *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. Thus, the trial court's task is "carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined ... to issue-finding; it does not extend to issue-resolution." *Gallo*, 22 F.3d at 1224.

Summary judgment is inappropriate only if the issue to be resolved is *both* genuine *and* related to a material fact. Therefore, the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. An issue is "genuine ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505 (internal quotation marks omitted). A material fact is one that would "affect the

outcome of the suit under the governing law." *Id.* As the Court observed in *Anderson*: "[T]he materiality determination rests on the substantive law, [and] it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Id.* Thus, only those facts that *must* be decided in order to resolve a claim or defense will prevent summary judgment from being granted. When confronted with an asserted factual dispute, the court must examine the elements of the claims and defenses at issue on the motion to determine whether a resolution of that dispute could affect the disposition of any of those claims or defenses. Immaterial or minor facts will not prevent summary judgment. *See Howard v. Gleason Corp.,* 901 F.2d 1154, 1159 (2d Cir.1990).

When reviewing the evidence on a motion for summary judgment, the court must "assess the record in the light most favorable to the non-movant and ... draw all reasonable inferences in its favor." *Weinstock v. Columbia Univ.,* 224 F.3d 33, 41 (2d Cir.2000) (quoting *Del. & Hudson Ry. Co. v. Consol. Rail Corp.,* 902 F.2d 174, 177 (2d Cir.1990)). Because credibility is not an issue on summary judgment, the non-movant's evidence must be accepted as true for purposes of the motion. Nonetheless, the inferences drawn in favor of the nonmovant must be supported by the evidence. "[M]ere speculation and conjecture" is insufficient to defeat a motion for summary judgment. *Stern v. Trustees of Columbia Univ.,* 131 F.3d 305, 315 (2d Cir.1997) (quoting *Western World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir.1990)). Moreover, the "mere existence of a scintilla of evidence in support of the [non-movant's] position" will be insufficient; there must be evidence on which a jury could "reasonably find" for the nonmovant. *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505.

Finally, the nonmoving party cannot simply rest on the allegations in its pleadings since the essence of summary judgment is to go beyond the pleadings to determine if a genuine issue of material fact exists. *See Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548. "Although the moving party bears the initial burden of establishing that there are no genuine issues of material fact," *Weinstock,* 224 F.3d at 41, if the movant demonstrates an absence of such issues, a limited burden of production shifts to the nonmovant, which must "demonstrate more than some metaphysical doubt as to the material facts, ... [and] must come forward with specific facts showing that there is a genuine issue for trial." *Aslanidis v. United States Lines, Inc.,* 7 F.3d 1067, 1072 (2d Cir.1993) (quotation marks, citations and emphasis omitted). Furthermore, "unsupported allegations do not create a material issue of fact." *Weinstock,* 224 F.3d at 41. If the non-movant fails to meet this burden, summary judgment should be granted. The question then becomes: is there sufficient evidence to reasonably expect that a jury could return a verdict in favor of the non-moving party. *See Anderson,* 477 U.S. at 248, 251, 106 S.Ct. 2505.

## III. DISCUSSION

### A. Section 1983 Claim

 The Supreme Court has held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). In evaluating a claim of qualified immunity, the threshold inquiry is whether the plaintiff's allegations, if true, establish a constitutional violation. *Hope v. Pelzer,*

536 U.S. 730, 736, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) (citing *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201, 121 S.Ct. 2151. On the other hand, if a violation could be established looking at the record in the light most favorable to the plaintiff, a court must then determine whether the defendant's actions, under pre-existing law, violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) (citing *Harlow*, 457 U.S. at 818, 102 S.Ct. 2727).

 In order for a right to be "clearly established," the contours of that right "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Hope*, 536 U.S. at 739, 122 S.Ct. 2508. "This analysis operates to protect [officials] from the sometimes hazy border between [lawful and unlawful conduct]." *Saucier*, 533 U.S. at 206, 121 S.Ct. 2151 (internal quotations omitted). Thus, the state of the law at the time of the incident must be clearly established so as to provide the defendant fair warning that the alleged conduct was unconstitutional. *Hope v. Pelzer*, 536 U.S. 730, 741, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) (citing *United States v. Lanier*, 520 U.S. 259, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997)).

 While prior case law concerning a particular right need not be directly on point with respect to the facts of the case at issue, a certain level of specificity is required to prevent plaintiffs from circumventing the fair warning requirement simply by alleging a violation of extremely abstract rights. *See Hope*, 536 U.S. at 739, 122 S.Ct. 2508. However, "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has [not] previously been held unlawful." *Hope*, 536 U.S. at 741, 122 S.Ct. 2508 (citing *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). Summary judgment based on qualified immunity is appropriate if "the law did not put the [government official] on notice that his conduct would be clearly unlawful." *Saucier*, 533 U.S. at 202, 121 S.Ct. 2151 (citing *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986) (qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law")).

"A seizure triggering the Fourth Amendment's protections occurs only when government actors have, by means of physical force or show of authority, . . . in some way restrained the liberty of a citizen. . . ." *Graham v. Connor*, 490 U.S. 386, 395 n. 10, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (citations and internal quotation marks omitted)(citing *Terry v. Ohio*, 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). In this case, the plaintiff was seized as a result of the defendant's show of his authority as a security aide. The next question is whether the seizure was unreasonable.

"[T]he touchstone of the Fourth Amendment is reasonableness. Reasonableness, in turn, is measured in objective terms by examining the totality of the circumstances." *Ohio v. Robinette*, 519 U.S. 33, 39, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996)(internal quotations and citations omitted).

Neither the Second Circuit nor the Supreme Court has defined the standard by which to measure the more limited intrusion that occurs when a school official de-

tains a student. *See Bisignano v. Harrison Central School Dist.*, 113 F.Supp.2d 591, 596 (S.D.N.Y.2000). However, Supreme Court cases decided before the incident in this case

> held in the Fourth Amendment context that while children assuredly do not shed their constitutional rights at the schoolhouse gate, the nature of those rights is what is appropriate for children in school. In particular, the school setting requires some easing of the restrictions to which searches by public authorities are ordinarily subject.... Even more to the point, these cases also recognize that deterring drug use by schoolchildren is an important—indeed, perhaps compelling interest.

*Morse v. Frederick*, —— U.S. ——, ——, 127 S.Ct. 2618, 2627–28, 168 L.Ed.2d 290, —— (2007) (citations omitted).

In a case presenting the issue of the reasonableness of a search of a student, the Supreme Court held that

> the legality of a search of a student should depend simply on the reasonableness, under all the circumstances, of the search. Determining the reasonableness of any search involves a twofold inquiry: first, one must consider whether the action was justified at its inception, second, one must determine whether the search as actually conducted was reasonably related in scope to the circumstances which justified the interference in the first place.

*New Jersey v. T.L.O*, 469 U.S. 325, 341, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985) (internal quotations and citations omitted).

Although the Supreme Court has decided several cases involving searches of students, it has not addressed seizures of students. *See Bisignano*, 113 F.Supp.2d at 596. Regarding seizures of students, therefore, the court is only guided by the Supreme Court's general statements about the relationship between Fourth Amendment rights and the school setting. The Supreme Court has stated that "Fourth Amendment rights ... are different in public schools than elsewhere [and that] the 'reasonableness' inquiry cannot disregard the schools' custodial and tutelary responsibility for children." *Vernonia School Dist. 47J v. Acton*, 515 U.S. 646, 656, 115 S.Ct. 2386, 132 L.Ed.2d 564 (1995). "In *[New Jersey v. T.L.O.]*, [the Supreme Court] reaffirmed that the constitutional rights of students in public school are not automatically coextensive with the rights of adults in other settings." *Bethel School Dist. No. 403 v. Fraser*, 478 U.S. 675, 682, 106 S.Ct. 3159, 92 L.Ed.2d 549 (1986). The Supreme Court also stated that *T.L.O.* emphasized that the nature of the "State's power over schoolchildren ... permit[s] a degree of supervision and control that could not be exercised over free adults." *Vernonia*, 515 U.S. at 655, 115 S.Ct. 2386 (citing TLO).

The circuit courts that have dealt with seizures in the school setting have concluded that the reasonableness standard, set forth by the Supreme Court in *T.L.O.*, applies equally to seizures of a student's person. *See Shuman v. Penn Manor School Dist.*, 422 F.3d 141, 148 (3d Cir. 2005) ("[S]eizures in the public school context are governed by the reasonableness standard, giving special consideration to the goals and responsibilities of our public schools."); *Wallace v. Batavia School Dist. 101*, 68 F.3d 1010, 1014 (7th Cir.1995) ("[I]n the context of a public school, a teacher or administrator who seizes a student does so in violation of the Fourth Amendment only when the restriction of liberty is unreasonable under the circumstances then existing and apparent."); *Hassan v. Lubbock Indep. School Dist.*, 55 F.3d 1075, 1079 (5th Cir.1995) ("[T]he reasonableness of seizures must be determined in light of all of the circumstances...."); *Edwards v. Rees*, 883 F.2d

882, 884 (10th Cir.1989) ("the same considerations which moved the Supreme Court to apply a relaxed Fourth Amendment standard in cases involving school searches support applying the standard in school seizure cases.").

■ If the plaintiff's version of the facts is adopted, a reasonable jury could find that the defendant unreasonably seized the plaintiff's person and thus violated her Fourth Amendment rights. However, in view of the state of the law at the time of the incident, the court concludes that such conduct on the part of the defendant would not have violated a clearly established constitutional right of the plaintiff of which a reasonable person would have known. What is required is not fair warning to the defendant that his conduct was wrong or inappropriate, but fair warning that it was unconstitutional. *See Hope,* 536 U.S. at 730, 122 S.Ct. 2508. Therefore, the defendant's motion for summary judgment on the § 1983 claim on the basis of qualified immunity is being granted.

### B. State Law Claim

The plaintiff also brings a state law claim for false imprisonment. "The district courts may decline to exercise supplemental jurisdiction over a [state law] claim ... if ... the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C.A. § 1367(c)(3). "[P]endent jurisdiction is a doctrine of discretion, not of plaintiff's right." *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

■ While dismissal of the state law claims is not mandatory, *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988), when "all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Id.* Accordingly, the court declines to exercise supplemental jurisdiction over the plaintiff's state law claims.

### IV. Conclusion

For the reasons set forth above, the Defendant's Motion for Summary Judgment (Doc. No. 15) is hereby GRANTED. Judgment shall be entered in favor of the defendant on the plaintiff's claim pursuant to 42 U.S.C. § 1983.

The Clerk shall close this case.

It is so ordered.